SCOTT MACEK, Plaintiff-Appellant, v. SCHOONER'S, INC., *et al.*, Defendants-Appellees.

First District (1st Division)   Nos. 1—90—1967, 1—90—3238 cons.

Opinion filed December 23, 1991.

Michael W. Rathsack, of Chicago, for appellant.

Pretzel & Stouffer, Chartered, of Chicago (Lynn B. McKay, Robert Marc Chemers, and Anne Scheitlin Johnson, of counsel), for appellee Schooner's, Inc.

Thomas J. Wagner, of Chicago, for other appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff Scott Macek filed a complaint against Hands Down Productions, Inc. (Hands Down), and Schooner's, Inc., Donald K. Niven and Daniel Niven to recover damages arising from an injury plaintiff

sustained while participating in an arm wrestling contest sponsored by defendants. The circuit court granted summary judgment for defendants, from which plaintiff appeals, presenting the issue of whether the court erred in determining that there were no factual issues because the contest entry form constituted a general release.

On July 2, 1987, plaintiff went to Schooner's, a tavern at 341 East 167th Street in Harvey, Illinois, where an arm wrestling contest was scheduled utilizing an arm wrestling machine. Plaintiff had not intended to participate, but decided to enter after he spoke with the promoters, Dan and Don Niven, about the operation and safety of the equipment, and tried out the machine. The Nivens were dressed in referee shirts and encouraged patrons of the tavern to participate.

Prior to participation in the contest, plaintiff signed a form titled "World Class Arm Wrestling," which provided:

> "In consideration of your accepting this entry, I hereby, for myself, my heirs, executors, and administrators, waive any and all right and claim for damages I may have against the World Class Events Corporation, Its Official Franchises, the sponsor(s), and the host of this event, and their representatives and their assignees for any and all injuries suffered by me at said World Class Arm Wrestling Tournament. I also herby [*sic*] certify, that I have no physical condition or disability that would make my participation in said arm wrestling tournament in any way dangerous to my health.
>
> In the spirit of good sportsmanship, I grant permission to The World Class Events Corp., and Its Official Franchises, rights to video tape and/or photograph this tournament, in which I am a contender. I give this permission with the understanding and knoweledge [*sic*] that these materials may be used in part or in whole for referee certification and training, the explanation of the World Class Arm Wrestling rules and machine operation and in publicity, to further promote and expand the interest of World Class Arm Wrestling throughout the world. I also give my permision [*sic*] to duplicate any of these materials in which I may appear."

In addition, the form included blank spaces for an entrant's weight, entry number, name, address, telephone number and signature. Plaintiff stated that he did not read the five-inch by seven-inch card before he signed it. He then paid a $5 entry fee and was classified according to his weight. While participating in the tournament, plaintiff's arm broke, and this injury was later determined to be a complete break of

the right humerus with a permanent loss of right arm flexion and extension.

Plaintiff's initial four-count complaint was filed on July 13, 1988. The complaint went through two amendments which are not in issue here. In his second-amended complaint filed on March 3, 1989, the first count alleged that the negligence of Hands Down, Schooner's, Inc., Daniel Niven and Donald Niven was the proximate cause of his injuries. Count II alleged that defendants Hands Down and the Nivens provided express warranties concerning the safety of the equipment while count III alleged that they negligently set up the machine. In count IV, plaintiff alleged that the arm wrestling machine was defective and unreasonably dangerous.

On April 23, 1990, Schooner's, Inc., filed a motion for summary judgment on the grounds that the form signed by plaintiff released defendant from any liability for injury. A hearing on this motion was conducted on June 4, 1990, and the trial court granted the motion as to all defendants. A transcript of the hearing is not included in the record on appeal. According to the order, the trial court found no inference or fact supporting fraud or misrepresentation as to the entry form, the nature of the risk was clearly anticipated and the release was a complete bar to the plaintiff's cause of action. Plaintiff filed a timely notice of appeal.

■■ "[A] motion for summary judgment should be granted only when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, quoting Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) In considering whether a genuine issue of material fact exists, "courts must consider the pleadings, depositions, *** and affidavits on file *** and must construe them strictly against the movant and liberally in favor of the opponent." (*Purtill*, 111 Ill. 2d at 240.) Summary judgment would be appropriate in the instant case only if the pleadings and depositions establish as a matter of law that plaintiff's signature on the form relieved defendant of all liability for plaintiff's injury.

Exculpatory clauses in contracts must contain clear, explicit and unequivocal language in order to absolve a party from liability for negligence. (*Garrison v. Combined Fitness Centre, Ltd.* (1990), 201 Ill. App. 3d 581, 559 N.E.2d 187.) Under Illinois law, exculpatory contracts are not favored and are strictly construed against the maker. (*Calarco v. YMCA* (1986), 149 Ill. App. 3d 1037, 501 N.E.2d 268.) Thus, defendants are not entitled to summary judgment in the instant

case unless the document provides in unambiguous, explicit language that defendants are relieved from liability.

In *Calarco v. YMCA* (1986), 149 Ill. App. 3d 1037, 1039, 501 N.E.2d 268, an exculpatory agreement provided:

> " 'In consideration of my participation in the activities of the Young Men's Christian Association of Metropolitan Chicago, I do hereby agree to hold free from any and all liability the YMCA of Metropolitan Chicago and its respective officers, employees and members and do hereby for myself, my heirs, executors and administrators, waive, release and forever discharge any and all rights and claims for damages which I may have or which may hereafter accrue to me arising out of or connected with my participation in any of the activities of the YMCA of Metropolitan Chicago.
>
> I hereby do declare myself to be physically sound, having medical approval to participate in the activities of the YMCA.' "

This clause was held insufficient to protect the defendant from liability as a matter of law. The court noted that the clause did not adequately describe the covered activities. It was further noted that the statement immediately following the alleged exculpatory language contains a declaration of physical health by the signer, and that combination of the two provisions further complicated the interpretation of the form.

■ We agree with plaintiff that *Calarco* is directly on point and establishes that summary judgment was not appropriate in the instant case. The exculpatory clause does not specify the covered activities but rather merely indicates that damages for "all injuries suffered *** at said World Class Arm Wrestling Tournament" are waived. Most significantly, the line immediately following the exculpatory language in this case as in *Calarco* provides additional ambiguity. The line represents a certification of the signer's physical health. The arising ambiguity is whether the intent is to release the promoter from liability only when the injury results from the participant's physical condition or from negligence on the promoter's part. Based upon this ambiguity, we find that summary judgment was not correct.

Accordingly, the judgment of the circuit court of Cook County is reversed and the cause is remanded.

Reversed and remanded.

MANNING, P.J., and CAMPBELL, J., concur.