SHELDON ABRAMOWITZ, Appellant, v NEW YORK UNIVERSITY DENTAL CENTER, COLLEGE OF DENTISTRY, Respondent.

Second Department, October 28, 1985

### APPEARANCES OF COUNSEL

*Cooperstein, Beck & Rubin, P. C.* (*Leland Stuart Beck* of counsel), for appellant.

*Bower & Gardner* (*Howard R. Cohen* of counsel), for respondent.

### OPINION OF THE COURT

GIBBONS, J.

At issue on this appeal is whether, under the circumstances of this case, a release contained in a dental clinic registration form signed by the plaintiff bars him from suing to recover damages for personal injuries he allegedly incurred as a result of defendant's malpractice. We conclude that the release was legally insufficient to exculpate defendant from its negligence, if any.

On October 8, 1980, plaintiff, a 32-year-old teacher and student at New York University, was referred by a friend to the clinic operated by defendant New York University College of Dentistry for necessary dental reconstruction. The work was to be performed by dentists taking postgraduate courses and working under the direction and supervision of their instructors at reduced cost to the patient.

According to the plaintiff, after some initial processing and a preliminary examination, he was ushered into an examination room, placed in the traditional reclining position in a dental examining chair and subjected to a probing examination of his teeth and gums by a Dr. Weiss. At some point during the course of this examination, a female employee of the defendant college entered the examination room and advised the plaintiff that his signature was required on an official registration form. A sheet of paper bearing the simple caption "Registration Form" was thereupon tendered to the plaintiff for his signature without any explanation or opportunity for review, and was signed by the plaintiff in the midst of the examination, while still in a reclining position, and with the customarily blinding dental examination light shining in his eyes.

Subsequently, plaintiff commenced the within action against the defendant for dental malpractice, and was met, *inter alia,* with the affirmative defense that the form which he had signed contained a waiver of liability releasing the defendant from any and all culpability for the effects of its own negligence. Upon examination, it appears that the form in question, entitled "Registration Form", is divided into six separate sections. In the upper left-hand corner is a place for biographical information such as the patient's name and date of birth, which was apparently filled in by the defendant's employee, and in the upper right-hand corner is a section entitled "MEDICAID" in large letters which has a line drawn through it. Directly below the biographical information is an uncompleted section entitled "THIRD PARTY PAYER", and to the right of that, under the Medicaid section, is another blank section entitled "AVAILABILITY", in which information regarding the days of the week on which the patient will be available for treatment can be placed. In the lower left-hand corner is a section entitled "ADDITIONAL INFORMATION" which is apparently used to indicate the preferred method of payment, and to the right of that is an untitled section which recites the following in significantly smaller, almost illegible letters:

"IN CONSIDERATION OF the reduced rates given to me by New York University I hereby release and agree to save harmless NEW YORK UNIVERSITY, its doctors and students from any and all liability arising out of or in connection with any injuries or damages which I may sustain while on its premises, or as a result of any treatment in its infirmaries.

"I further agree to abide by all the rules and regulations of this infirmary as set forth in the manual of rules and regulations received this day."

Below this is a signature bar bearing the plaintiff's signature and the date of October 10, 1980, as well as the initials of defendant's employee following the word "Witness".

In moving to dismiss the aforementioned affirmative defense, plaintiff alleged all of the information set forth above, as well as the categorical assertion that he was unaware of the contents of the pleaded release and "would [not] have permitted [the] treatment * * * had [he] known or been given the opportunity to understand the true request of the defendant in asking [him] to sign the registration form, to wit, that the form contained a waiver and release". Defendant appeared in opposition to the motion with a showing that included an affidavit by the employee who had witnessed the plaintiff's signature and disputed his version of the incident. Defendant requested the court to consider the motion as one for summary judgment pursuant to CPLR 3211 (c). The court agreed, and, searching the record, concluded that the language of the alleged release was "clear and unambiguous" and barred plaintiff's claim. Accordingly, summary judgment was granted in favor of the defendant dismissing the complaint.

In our view, the order granting summary judgment in favor of the defendant was erroneous as the language of the purported release is legally insufficient to accomplish its intended result. Accordingly, in addition to reinstating the complaint and denying summary judgment, we proceed further and grant plaintiff's motion to dismiss this affirmative defense.

It is clear, as a general matter, that the law looks with disfavor upon agreements intended to absolve an individual from the consequences of his negligence (*see, Gross v Sweet,* 49 NY2d 102), and although they are, with certain exceptions, enforceable like any other contract against their signatories, such agreements are always subjected to the closest of judicial scrutiny and will be strictly construed against their drawer (*see, Gross v Sweet, supra,* at p 106; *Van Dyke Prods. v Eastman Kodak Co.,* 12 NY2d 301, 304; *Boll v Sharp & Dohme,* 281 App Div 568, 570, *affd* 307 NY 646). Thus, parties will not be presumed to have intended to exempt themselves from the consequences of their own negligence in the absence of express and unmistakable language to that effect (*see, Van Dyke Prods. v Eastman Kodak Co., supra,* at p 304 [language which is "absolutely clear"]; *Ciofalo v Vic Tanney Gyms,* 10 NY2d 294, 297 [language which is "sufficiently clear and unequivocal"]; *Boll v Sharp & Dohme, supra,* at p 570 [language which is "clear and explicit"]), or to put it another way, it must clearly appear

that the "limitation of liability extends to [the] negligence or other fault of the party attempting to shed his ordinary responsibility" before an exculpatory clause will be given legal effect (*Howard v Handler Bros. & Winell,* 279 App Div 72, 76, *affd* 303 NY 990). Moreover, it is not sufficient that the terms of the asserted agreement be "unambiguous" in their import, they must be "understandable" as well (*see, Gross v Sweet, supra,* at p 107; *Rappaport v Phil Gottlieb-Sattler, Inc.,* 280 App Div 424, *affd* 305 NY 594; *cf.* General Obligations Law § 5-702 [a]).

In pursuance of the foregoing, it has been held that a "'Responsibility Release'" purporting to absolve a parachute jumping instructor from "'any and all claims * * * that [the student] * * * may have against [the instructor, etc.] * * * for any personal injuries or property damage that [the student] may sustain or which may arise out of [his] learning'" the sport of parachute jumping did not absolve the instructor of liability predicated on his own negligence (*Gross v Sweet, supra,* at p 109), nor did a clause purporting to release a youth tour operator from "'any and all responsibility or liability of any nature whatsoever for any * * * personal injury occurring on this trip'" (*Kaufman v American Youth Hostels,* 6 AD2d 223, 229, *mod on other grounds* 5 NY2d 1016; *see also, Hertzog v Harrison Is. Shores,* 21 AD2d 859 [agreement purporting to "waive claim for any loss to personal property, or for any personal injury while a member of [a] club" held legally insufficient to bar a cause of action based on ordinary negligence]). Moreover, it was held in *Boll v Sharp & Dohme* (307 NY 646, 647, *supra*) that an agreement signed by a compensated blood donor to the effect that the defendant drug company was not "in any way responsible for any consequences * * * resulting from the giving of such blood or from any of the tests, examinations or procedures incident thereto, and * * * releas[ing] and discharg[ing] [said defendant] * * * from all claims and demands whatsoever * * * against them * * * by reason of any matter related or incident to such donation of blood" did not bar a subsequent negligence action to recover for damages sustained when, upon completion of the blood donation, the donor fainted and fell to the floor (*see also, Mynard v Syracuse Binghamton & N. Y. R. R. Co.,* 71 NY 180, 183 [contract of shipment providing that the carrier, in consideration of a reduced rate, would be released from any and all claims for damages "'from whatsoever cause arising'" held legally insufficient to bar a subsequent cause of action for damages predicated on negligence]). By way of contrast, where the plaintiff agreed "to assume full responsibility for any injuries which might occur to her in or about defendant's premises, 'including but without

limitation, any claims for personal injuries resulting from or arising out of the *negligence* of' the defendant", a cause of action for damages predicated on ordinary negligence was found to be barred (*Ciofalo v Vic Tanney Gyms,* 10 NY2d 294, 296, *supra;* emphasis supplied). As the Court of Appeals stated in *Gross v Sweet* (49 NY2d 102, 108, *supra;* emphasis added) with reference to such clauses: "By and large, if [it] is the intention of the parties [to exclude liability for negligence], the fairest course is to provide explicitly that claims based on negligence are included * * * That does not mean that the word 'negligence' must be employed for courts to give effect to an exculpatory agreement; *however, words conveying a similar import must appear* (see *Theroux v Kedenburg Racing Assn.,* 50 Misc 2d 97, 99, affd 28 AD2d 960 [agreement provid(ing) for release of liability for any injury 'regardless of how such injury * * * may arise, and regardless of who is at fault * * * and even if the loss is caused by the neglect or fault of' the defendant])" (*see also, Fearns v Columbia Univ. School of Dental & Oral Hygiene* [App Term, 1st Dept May 1979]).

Applying the logic of these cases to the facts at bar, the language employed in the instant case is no more explicit than that employed without success in *Gross v Sweet* (*supra*), as it merely undertakes to release and save harmless the defendant, its doctors and students "from any and all liability arising out of or in connection with any injuries or damages which [the plaintiff] may sustain while on its premises or as a result of any treatment in its infirmaries". The word "negligence" is never mentioned, and construing the language strictly against its drafter, it simply cannot be said to unmistakenly express an intention on the part of the plaintiff to absolve the defendant of liability for its own negligence. In fact, assuming that the language was otherwise adequate to alert the plaintiff to the risks inherent in securing dental treatment at the hands of postgraduate student-practitioners, it still does not follow "that he was [thereby made] aware of, much less intended to accept, any *enhanced* exposure to injury occasioned by the carelessness of the very persons on [whom] he depended for his [treatment]" (*Gross v Sweet, supra,* at p 109). Thus, while the plaintiff, had he been able to read the clause carefully and reflectively, might reasonably have been able to draw therefrom an understanding that the defendant was not to bear any responsibility for those minor injuries and discomforts which might ordinarily occur at the hands of adequately supervised postgraduate student dentists, he should not be deemed to have understood that he was thereby absolving the defendant from any and all liability for

injuries arising out of the failure to exercise ordinary care in the rendition of such treatment. As the Court of Appeals noted in *Gross v Sweet* (*supra,* at p 110) "while * * * the law grudgingly accepts the proposition that men may contract away their liability for negligently caused injuries, they may do so only on the condition that their intention be expressed clearly and in 'unequivocal terms' (*Van Dyke Prods. v Eastman Kodak Co.,* 12 NY2d 301, 305, *supra*)". Manifestly, no such showing has been made in the case at bar.

Accordingly, we reverse the order appealed from, reinstate the complaint and grant so much of plaintiff's motion as sought to dismiss the affirmative defense of release.[*]

LAZER, J. P., MANGANO and NIEHOFF, JJ., concur.

Order of the Supreme Court, Kings County, dated November 17, 1983, reversed, with costs, complaint reinstated and so much of plaintiff's motion as sought to dismiss the affirmative defense of release granted.

---

[*] No issue has been raised disputing plaintiff's entitlement to relief under the branch of this motion which sought to dismiss defendant's second affirmative defense of the Statute of Limitations.